## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| ANDRÉA SPENCE, on behalf of herself and others similarly situated, <br><br>    Plaintiff, <br><br>  v. <br><br> CAVALRY PORTFOLIO SERVICES, LLC and CAVALRY SPV I, LLC, <br><br><br>    Defendants. | Civil Action No. 1:14-cv-12655-PBS |

## PLAINTIFF'S MEMORANDUM IN SUPPORT OF UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT AGREEMENT AND PROVISIONAL CLASS CERTIFICATION

### I.  Introduction

Plaintiff Andréa Spence files herewith her Memorandum in Support of her Unoppposed Motion for Preliminary Approval of Settelement Agreement.  A proposed Class Action Settlement Agreement ("Settlement Agreement" or "Agreement") is attached as Exhibit 1 to the Motion.  Exhibit A to the Settlement Agreement is a proposed Class Notice. In turn,  Exhibit B to the Settlement Agreement consists of a proposed Order providing for provisional certification of a settlement class, preliminary approval of the Settlement Agreement,[1] issuance of notice to Settlement Class Members, as well as scheduling of deadlines and a date for a hearing on final approval.

---

[1] Unless otherwise provided herein, all terms in this memorandum shall have the same meaning as those terms in the Settlement Agreement.

As set forth more fully below, under the proposed Settlement Agreement Cavalry will establish a Settlement Fund of $550,333.00 to pay Settlement Class Members, will forgive more than $2 million in outstanding balances on class members' accounts attributable to prepurchase interest, will establish a fund of $284,167 to pay reasonable attorney fees and costs, subject to Court approval, and will pay costs of notice and administration. Class members are not required to submit claim forms to participate and obtain the benefits of the Agreement.  Any funds which can not be distributed to class members as ordered by this Court will be paid to an appropriate charitable organization approved by this Court.

The Agreement negotiated by the parties is fair, adequate, and reasonable, and this Court should grant preliminary approval. Defendants Cavalry Portfolio Services LLC ("CPS") and Cavalry SPV I, LLC ("SPV") (referred to collectively as "Cavalry" or "Defendants") do not oppose this motion.

## II.      Statement Of The Case

This class action challenges CPS's seeking and collection of allegedly unlawful interest from Massachusetts consumers on credit card debts SPV purchased from FIA Card Services.

SPV buys large volumes of credit card debt from creditors, including FIA (Bank of America).  Plaintiff alleges that FIA ceased assessing contractual interest on charged-off accounts and thereby waived its right to collect such interest. Cavalry denies that FIA waived the right to collect any interest.

CPS assessed interest on these accounts for a time period after the account had been charged off by FIA and prior to the date of purchase. CPS sought to collect this interest through litigation and other methods.  It also reports balances to consumer credit bureaus that contain this interest.

The complaint alleges that Cavalry's interest assessment practices violate several prohibitions contained in the Fair Debt Collection Practices Act ("FDCPA"):

- it made false, deceptive and misleading statements in connection with the collection of debts;

- it collected or attempted to collect amounts not permitted by law;

- it falsely represented the character, amount or status of debts;

- it threatened to take an action which cannot legally be taken; and

- it communicated false credit information.

15 U.S.C. §§ 1692e(2), (5), (6), (8), (10), 1692f(1).

Massachusetts law similarly prohibits unfair and deceptive debt collection practices, M.G.L. c. 93 § 49, as well as the reporting of inaccurate information to credit bureaus, M.G.L. c. 93 § 54A. These laws subject Cavalry to actual and statutory damages as well as attorneys' fees. Cavalry, however, denies that its practices violated any of these prohibitions.

### III.    The Terms Of The Settlement

The parties' Settlement Agreement is attached as Exhibit 1 to Plaintiff's Unopposed Motion for Preliminary Approval of Settlement Agreement. The material terms include the following:

1.   *Settlement Class:*   The Settlement Class is composed of: (a) all individuals who at any time during the Class Period maintained an address Massachusetts; (b) whose credit card debt SPV purchased from FIA Card Services, Inc.; (c) where FIA Card Services, Inc. had ceased charging interest to the debt prior to SPV's purchase; (d) CPS added interest for a period prior to the date SPV purchased the debt; and (e) during the Class Period CPS sought to collect such prepurchase interest, and/or reported a balance including such interest to a credit reporting agency; (f) against whom Cavalry has not obtained a judgment or release as of the date of this

Agreement; and/or (g) who have not filed for or obtained a discharge in bankruptcy applicable to

the Account.  The class period is March 14, 2010 through the present.

2.      *Relief for Settlement Class Members*: Following Final Approval:

(i)      Cavalry will pay $550,333 into a Settlement Fund which will be used to provide monetary relief to Settlement Class Members, as described below in subsections (ii), (iii) and (iv), and an incentive payment of $7,500 to the Class Representative, subject to Court approval;

(ii)     Settlement Class Members who paid to Cavalry any Prepurchase Interest, as defined in the Settlement Agreement, will be entitled to a full refund of any such payments;

(iii)    Settlement Class Members who did not pay any Prepurchase Interest will be entitled to a payment of $20; and

(iv)    Settlement Class Members from whom Cavalry sought to collect Prepurchase Interest within the time period beginning on or after March 13, 2013 will be entitled to an additional, equal share of the Settlement Fund remaining after deduction for refunds and the $20 payments, described in (ii) and (iii), and the incentive award;

(v)     For All Settlement Class Members for whom Cavalry still owns and/or services their accounts, Cavalry will forgive all Prepurchase Interest remaining on their Accounts, an amount that exceeds $2 million in total;

(vi)    Cavalry will pay the costs of class notice and administration of the Settlement Agreement.

3.      *Notice and Administration*: Subject to this Court's preliminary approval of the

Agreement, the Settlement Administrator shall mail notice to Settlement Class members in

accordance with the schedule contained in the Preliminary Approval Order, and the terms of the

Agreement. Class Notice will be sent by first class mail directly to class members; further

information will be available from the Settlement Administrator and class counsel. A proposed

Notice is attached to the Settlement Agreement as Exhibit B.

4.      *Attorneys' Fees and Costs*: The Settlement Agreement provides that Class

Counsel may request that this Court award  attorneys' fees of up to $275,167 and costs of

$9,000, subject to Court approval. [Settlement Agreement, ¶ 3.02].  Cavalry has agreed not to

oppose to this request.

5.      *Incentive Award*: The Settlement Agreement provides that Cavalry will not oppose payment of an incentive or service award of $7,500 to Plaintiff, to be paid from the Settlement Fund.

6.      *Identification of Class Members*: Cavalry has represented that, to the best of its knowledge, based on researching customer accounts, the Settlement Class encompasses approximately 10,000 members.

7.      *Cy Pres Award*: Subject to the Court's approval, the residue of the Settlement Fund in the form of uncashed checks, if any, after payment to Settlement Class Members and other amounts identified above, will be distributed to a *cy pres* trust, with the monies to be donated to Action for Boston Community Development, a non profit organization which, *inter alia*, provides financial education to consumers. [Settlement Agreement, ¶ 6.05].

8.      *Release*: Settlement Class Members will release all claims that were or could have been brought in the Action arising from the facts alleged in the Amended Complaint [Settlement Agreement, ¶ 7].

### IV.     The Settlement Agreement Should Be Preliminarily Approved As Fair, Reasonable And Adequate

Plaintiff requests, with the assent of Cavalry, that the Court enter the proposed Preliminary Approval Order certifying the Settlement Class, preliminarily approving the Settlement Agreement, providing for notice to the Settlement Class, and scheduling the final approval hearing. The proposed Preliminary Approval Order is attached to the Settlement Agreement as Exhibit A. The Proposed Order also sets suggested deadlines for final approval briefing and objections.

A.      **Facts and Procedural Background**

Plaintiff contends that Cavalry's treatment of her account is consistent with and illustrative of its practices as to all class members. In September 2009, FIA Card Services charged-off Ms. Spence's account in the amount of $21,355, but it retained the account until November 2011.

In November 2011, FIA sold the account to Cavalry. One month later, Cavalry sent Ms. Spence a collection letter, stating that it had purchased the account, and that the Current Balance due was now $26,794.32, an increase of $5,438.66. No explanation was given for the increase.

After exchanging written discovery and conducting four depsitions, and engaging in preliminary discussions about the issues in the case, the parties determined that it might be possible to resolve this action through settlement. Plaintiff requested and was provided with detailed information concerning the size of the class and also audited financial statements showing the net worth of each of the Defendants. Plaintiff thus entered into settlement negotiations with substantial information about the nature and extent of the challenged practices, and the merits of the legal claims and factual allegations. The negotiations are further described in Section C, below.

These negotiations resulted in the Agreement presently before the Court. Based on their review and analysis of the relevant facts and legal principles, Plaintiff and her counsel believe that, in consideration of all the circumstances and after arm's length settlement negotiations with Cavalry's counsel, the terms and conditions of the Agreement are fair, reasonable, and adequate, and beneficial to and in the best interests of the Plaintiff and the proposed Settlement Class. Cavalry denies all liability, but has agreed to the Settlement to avoid the costs and risks of litigation.

B.      **Standard and Process for Approval**

Federal Rule of Civil Procedure 23(e) requires court approval of a class action settlement.

*The Manual For Complex Litig. (Fourth)*, § 21.632 (2004), sets forth the procedures for

preliminary approval of settlements:

> If the preliminary evaluation of the proposed settlement does not disclose
> grounds to doubt its fairness or other obvious deficiencies, such as unduly
> preferential treatment of class representatives or of segments of the class,
> or excessive compensation for attorneys, and appears to fall within the
> range of possible approval, the court should direct that notice under Rule
> 23(e) be given to the class members of a formal fairness hearing, at which
> arguments and evidence may be presented in support of and in opposition
> to the settlement.

At the preliminary approval stage, the question for this Court is whether the settlement

falls well within the "range of possible approval," and is sufficiently fair, reasonable and

adequate to warrant dissemination of notice apprising Settlement Class Members of the proposed

Settlement and to establish procedures for a final settlement hearing under Rule 23(e). H.

Newberg, A. Conte, *Newberg on Class Actions* (5th ed. 2015), §13.13. There is generally a

presumption in favor of the settlement "[i]f the parties negotiated at arm's length and conducted

sufficient discovery." *In re Pharm. Indus. Average Wholesale Price Litig.,* 588 F.3d 24, 32–33

(1st Cir. 2009), at least where "the proponents of the settlement are experienced in similar

litigation." *In re Lupron Mktg. and Sales Practices Litig.,* 345 F.Supp.2d 135, 137 (D. Mass.

2004).  *See also Durrett v. Housing Auth. of City of Providence,* 896 F.2d 600, 604 (1st Cir.

1990) (noting a "clear policy in favor of encouraging settlements"). It will be shown below that

consideration of the relevant factors indicates that the proposed Settlement Agreement in this

case is in the range of possible approval and supports authorizing dissemination of notice of the

settlement to Settlement Class Members.

In determining whether class action settlements should be approved, "[c]ourts judge the fairness of a proposed compromise by weighing the plaintiff's likelihood of success on the merits against the amount and form of the relief offered in the settlement. [Citation omitted] . . . They do not decide the merits of the case or resolve unsettled legal questions." *Carson v. American Brands, Inc.*, 450 U.S. 79, 88 n.14 (1981). As one court has observed, "[t]his determination is similar to a determination that there is 'probable cause' to think the settlement is fair and reasonable." *Alaniz v. California Processors, Inc*., 73 F.R.D. 269, 273 (N.D. Cal. 1976). Once the settlement is found to be "within the range of possible approval," a final approval hearing is scheduled and notice is provided to the class. *Id*.

## C.      The Parties' Negotiations

The parties, through counsel, have conducted arm's-length negotiations to resolve this matter, with the able assistance of a highly experienced and well-respected neutral mediator, Brad Honoroff of The Mediation Group in Brookline, Massachusetts. Many of the issues separating the parties were bridged during the first full day of in-person mediation, with clients in attendance, followed by additional negotiations via phone and email, and the remaining differences between the parties were resolved during a second day of in-person mediation. These agreements were reduced to writing in a term sheet signed by counsel on the afternoon of the second day of mediation.

## D.      The Proposed Settlement Should Be Preliminarily Approved

### 1.      The Settlement Provides Significant Benefits To The Settlement Class

As described above, the economic relief provided under the Settlement consists of $550,333 in cash relief to eligible Settlement Class Members. No claim forms will be required.

In addition, and importantly, Cavalry will forgive all Prepurchase Interest still remaining on class members' Accounts, an amount that exceeds $2 million in total.

### 2.    Voluntary Settlement Of This Class Action Serves The Interests Of The Parties, The Court, And Affected Consumers

There is an overriding public interest in settling class action litigation. *Lazar v. Pierce,* 757 F. 2d 435, 439 (1st Cir. 1985). "By their very nature, because of the uncertainties of outcome, difficulties of proof, and length of litigation, class action suits lend themselves readily to compromise." *Newberg*, §11.41, *citing, HEW Corp. v. Tandy Corp.,* 1979 WL 1580 (D. Mass. 1979) (settlement appropriate where outcome was uncertain, and litigation would require expensive and lengthy trial).

Similarly, settlement of this particular case is appropriate. Although Plainitff believes she has strong claims under federal and state law, she understands that success on the merits is by no means assured. Whether FIA's conduct amounted to a waiver of interest, thus barring Cavalry as its assignee from adding it to the account, is not a settled issue in this jurisdiction or in any decision by any appellate court. And, apart from the merits, defendant has argued during mediation that Plaintiff's FDCPA claims are barred by the statute of limitations.

If approved by this Court, Settlement Class Members will receive substantial benefits now, without the delay, burden and risks of further litigation.

### 3.    The Settlement Resulted From Arm's-Length Negotiations And Is Not The Product Of Collusion

The requirement that a settlement be fair is designed to protect against collusion among the parties. There usually is an initial presumption that a proposed settlement is fair and reasonable when it was the result of arm's-length negotiations. The duration of this litigation, result for the Settlement Class, use of an experienced mediator and the hard-fought, arm's-length

negotiations between experienced, honorable attorneys for both sides, are all testaments to the

non-collusive nature of the settlement. *See* Ryan Affidavit, ¶¶ 14-15.

### 4.      The Factual Record Was Well Developed Through Independent Investigation And Discovery

To make a preliminary determination on the fairness of a proposed settlement agreement,

a court must have sufficient information to evaluate it. *Manual for Complex Litig. (Fourth)*, §

22.921. There is no precise formula for what constitutes sufficient evidence to enable the court to

analyze intelligently the contested questions of fact. This litigation has been ongoing for almost

18 months and substantial discovery has been conducted. Each party submitted to the other and

each in turn answered Interrogatories and Requests for Documents. Plaintiff conducted the

depositions of three of Cavalry's 30b(6) representatives and FIA's 30b(6) representative, and

Cavalry deposed the Plaintiff.  In addition, Cavalry's counsel has provided supplemental

information in the course of discussions leading up to the settlement negotiations, including

independently audited financial statements as to both defendants' net worth.

### 5.      The Proposed Notice To Settlement Class Members Is Adequate

Under Federal Rule of Civil Procedure 23(c)(2), class members are entitled to notice of

any proposed settlement and an opportunity to object or opt out before it is finally approved by

the Court. *Manual for Complex Litig. (Fourth),* § 21.31. Notice is adequate if it is "reasonably

calculated, under all the circumstances, to apprise interested parties of the pendency of the action

and afford them an opportunity to present their objections." *Eisen v. Carlisle & Jacquelin*, 417

U.S. 156, 174 (1974), *quoting, Mullane v. Central Hanover Bank & Trust Co.,* 339 U.S. 306, 70

S.Ct. 652, 94 L.Ed. 865 (1950*)*.

The proposed Notice, Exhibit A to the Settlement Agreement, is clear and

straightforward, providing Settlement Class Members with enough information to evaluate

whether to participate in the Settlement, as well as directions on how to seek further information. The Settlement Administrator will update addresses through the National Change of Address Database before Notice is mailed to Settlement Class Members. The Notice will be mailed to the last known address of all Settlement Class Members by first class mail and marked address correction requested. Any Notices returned with a forwarding address will be promptly re-mailed to the forwarding address. The Settlement Administrator will also use Accurint or similar database to locate Settlement Class Members whose Notices cannot be forwarded. This proposed method of providing notice is adequate under Rule 23(c)(2). *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 811 (1985) (individual mailed notice which clearly describes the case and class members' rights meets due process requirements).

**V.     The Settlement Class Is Appropriately Certified**

For settlement purposes, the Settlement Class meets all of the requirements of Fed. R. Civ. P. 23(a) and 23(b)(3) and (b)(2).

**A.     Rule 23(b)(3)**

**1.     Numerosity**

The Settlement Class as defined easily meets Rule 23(a)'s numerosity requirement. Cavalry has represented that the class encompasses approximately 10,000 accounts. This number of Settlement Class Members demonstrates that joinder is simply a logistical impossibility. *See, e.g., Gorsey v. I.M. Simon & Co.*, 121 F.R.D. 135, 138 (D. Mass. 1988) (800 to 900 member class made joinder impracticable). Indeed,  "[no] minimum number of plaintiffs is required to maintain a suit as a class action, but generally if the named plaintiff demonstrates that the potential number of plaintiffs exceeds 40, the first prong of Rule 23(a) has been met." *Garcia–Rubiera v. Calderon,* 570 F.3d 443, 460 (1st Cir.2009).

2.     **Commonality**

To meet the commonality requirement, the representative plaintiff is required to demonstrate that the proposed class members "have suffered the same injury." *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2551 (2011) (quoting *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 157 (1982)). In other words, commonality requires that the claims of the class "depend upon a common contention…of such a nature that it is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Id*. Even so, "commonality is a low hurdle." *Southern States Police Benevolent Ass'n v. First Choice Armor & Equip., Inc.,* 241 F.R.D. 85, 87 (D. Mass. 2007)).  The questions of law and fact in this litigation are substantially identical among Settlement Class Members, namely, whether Cavalry's policy and practice of assessing Prepurchase Interest violates the FDCPA and Chapter 93A. *See, e.g*., *Duhaime v. John Hancock Mutual Life Ins. Co.*, 177 F.R.D. 54, 63 (D. Mass. 1997) (each class member treated in similar manner); *Kaminiski v. Shawmut Credit Union*, 416 F. Supp. 1119, 1122-1123 (D. Mass. 1976) (same).

3.     **Typicality**

Plaintiff's claims are typical of those of Settlement Class Members and therefore meet Rule 23(a)'s typicality requirement. Like those of all Settlement Class Members, Plaintiff's claims arise from Cavalry's policy of assessing Prepurchase Interest. "Generally speaking, typicality is determines whether a sufficient relationship exists. between the injury to the named plaintiff and the conduct affecting the class," and the "plaintiff's interests are 'aligned with those of the represented group.'" *Newberg* (5th ed.), §3.29, at pp. 264-65. For virtually the identical reasons discussed in the preceding section, this element is also met. To be typical within the

meaning of the rule simply requires that the claims of named plaintiffs have the same characteristics as class members' claims. *Barry v. Moran,* 2008 WL 7526753, at *11 (D. Mass. Apr. 7, 2008).

### 4.    Adequacy Of Representation

Rule 23(a)(4) requires that "the representative parties will fairly and adequately protect the interests of the class." Plaintff has no interests that are antagonistic to or in conflict with the Settlement Class. *See Amchem Products v. Windsor*, 521 U.S. 591, 117 S.Ct. 2231, 2251, 138 L.Ed. 2d 689 (1997) (courts look simply at whether the representatives' interest are in any way antagonistic to or in conflict with those of the class members).  To be disqualifying, any conflict must involve the subject matter of the suit and may not be merely minor or collateral. *Berman v. Narragansett Racing Ass'n, Inc*., 414 F.2d 311, 317 (1st Cir. 1969), *cert. denied* 369 U.S. 1037; *Blackie v. Barrack*, 524 F.2d 891, 908-910 (9th Cir. 1975). Where the injuries suffered by the named plaintiff are the same as those that the class is alleged to have suffered, the adequacy requirement is usually satisfied. *Duhaime v. John Hancock Mutual Life Ins. Co.,* 177 F.R.D. 54, 63 (D. Mass. 1997).

Ms.  Spence has loyally and vigorously represented the class. She rejected an individual settlement offer that would have benefited her personally; provided responsive documents and interrogatory answers; sat for her lengthy deposition; and attended and actively participated in the two days of in-person mediation.

In addition, proposed class counsel are well-qualified.  They are active practitioners whose experience in consumer law is demonstrated by the affidavits attached to this memorandum. Ryan Affidavit, ¶¶ 3-12; Delbaum Affidavit, ¶¶ 1-5; Rossman Affidavit, ¶¶ 1-12.

**B.      Rule 23(b)(3)**

Rule 23(b)(3) requires that "the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action be superior to other available methods for the fair and efficient resolution of the controversy."

###        1.      Predominance

The requirement of predominance under Rule 23(b)(3) is met. The courts have routinely found predominance of common questions where the claims relate to a common course of conduct. *See, e.g., Waste Mgt. Holdings, Inc. v. Mowbray*, 208 F.3d 288, 296 (1st Cir. 2000) (predominance requirement satisfied by "sufficient constellation of common issues [that] bind class members together" and "cannot be reduced to a mechanical, single-issue test"); *Duhaime*, 177 F.R.D. 54, 64 (D. Mass. 1997) (requirement is "readily met in cases alleging consumer . . . fraud" where claim alleges single course of conduct, *quoting Amchem*, 521 U.S. at 625, 117 S.Ct. at 2250). The predominance element has clearly been met here because the claims of the Settlement Class Members and the circumstances under which these claims arise are identical.

###        2.      Superiority

Rule 23(b)(3) also lists four factors a court must analyze in determining whether a class action is superior to individual litigation: whether individuals have a strong interest in controlling potentially separate actions; a class action's effect on competing litigation involving members of the class; whether resolution of the case in a single forum is desirable; and the potential difficulties that management of a class action presents. A class action is the superior method of resolving large scale claims if it will "achieve economies of time, effort, and expense, and promote . . . uniformity of decision as to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable results." *Amchem*, 521 U.S. at 615, 117

S.Ct. at 2246. One reason that a class action is the superior method of proceeding in a case of this type is that it allows the plaintiffs "to pool claims which would be uneconomical to litigate individually." *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 809 (1985). Here, each Settlement Class Member's claim is relatively small, making it uneconomic for individuals to pursue these claims on their own, and therefore unlikely they will do so. *See Grace v. Perception Technology, Inc.*, 128 F.R.D. 165, 171 (D. Mass. 1989); *Randle v. SpecTran*, 129 F.R.D. 386, 393 (D. Mass. 1988).

Finally, any possible difficulties of managing a class action are vitiated by the fact of this Settlement Agreement. When "confronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems . . . for the proposal is that there be no trial." *Amchem*, 521 U.S. at 620, 117 S.Ct. at 2248.

## VI.     Conclusion

The proposed class action Settlement Agreement is fair, reasonable, and adequate. For the foregoing reasons, the Plaintiff respectfully requests that this Court approve the Settlement Agreement on a preliminary basis so that Notice may be sent, schedule appropriate deadlines for various settlement requirements as reflected in the accompanying motion, and schedule a hearing for final approval of the Settlement.

Dated:  December 9, 2015

Respectfully submitted,

*/s/ Elizabeth Ryan*
Elizabeth Ryan
John Roddy
Bailey & Glasser LLP
99 High Street, Suite 304
Boston, MA 02110
Telephone: (617) 439-6730
Fax: (617) 951-3954


*/s/ Charles M. Delbaum*
Charles M. Delbaum
Stuart T. Rossman
National Consumer Law Center
7 Winthrop Square, 4th Floor
Boston, MA 02110
Telephone: (617) 542-8010
Fax: (617) 542-8028
cdelbaum@nclc.org
srossman@nclc.org


*Counsel for Plaintiff, Andréa Spence*

**<u>Certificate Of Service</u>**

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic File (NEF) on December 9, 2015.

*<u>/s/ Elizabeth Ryan</u>*
Elizabeth Ryan